# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SELENA SHUREN,

          Plaintiff,

v.                                    Case No:  6:11-cv-1191-Orl-GJK

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

_____

# MEMORANDUM OF DECISION

Selena Shuren (hereafter "Ms. Shuren"), on behalf of S.T.M. (hereafter "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying Claimant's application for supplemental security benefits (hereafter "Application").  Doc. No. 1.  Claimant raises four issues on appeal.  Doc. No. 17.  Claimant's first two arguments are that the ALJ erred in determining that she has less than marked restrictions in the domains of interacting and relating with others, and attending and completing tasks.  Doc. No. 17 at 14-19.  Claimant next argues that the ALJ failed to articulate good cause for rejecting the opinion of her treating physicians.  Doc. No. 17 at 19-22.  Finally, Claimant argues that the ALJ failed to determine whether her speech limitation met a listing.  Doc. No. 17 at 22-24.  The Court finds that the ALJ's decision must be **REVERSED and REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) because

three of the four reasons the ALJ articulated for giving Claimant's treating doctor's opinions less than substantial weight were not supported by substantial evidence. [1]

## I.   MEDICAL AND OPINION EVIDENCE

### A.  Dr. McClure, Claimant's Treating Physician

On June 19, 2009, Samuel McClure, M.D., conducted his initial psychiatric evaluation of Claimant.   R. 289-91.   Dr. McClure reported complaints of Claimant's hyperactivity, impulsivity, restlessness, a short attention span, difficulty concentrating, difficulty staying on task, poor memory, poor organizational skills, poor academic performance and problems disrupting her classroom.  R. 289.  Dr. McClure reported complaints that Claimant intentionally tries to annoy others, is irritable, is easily bored, is easily frustrated, does not accept limits and does not take redirection easily.  R. 289.  Dr. McClure noted that Claimant had been treated with Adderall by Dr. Anna Collazos and the dosage had been increased from five milligrams to fifteen milligrams.  R. 289.

Dr. McClure's mental status examination revealed that Claimant was restless, hyperactive, impulsive, had a short attention span and had difficulty sitting still.  R. 290.  Dr. McClure noted that Claimant accepted limits and took redirection, but exhibited poor social interaction with a good deal of anger or jealousy.  R. 290.  Dr. McClure noted that Claimant's short and long term memory were intact and her affect was appropriate, although she had immature thoughts.  R. 290.  Dr. McClure indicated that Claimant's insight and judgment were minimal, her speech was clear and coherent, and her intelligence was average.  R. 290.  Dr.

---

[1] Because this error requires remand, the Court does not address the other issues Claimant raises.

McClure diagnosed Claimant with disruptive behavior disorder, oppositional defiant disorder and ADHD.[2]  R. 290.

On August 10, 2009, Dr. McClure indicated that Claimant is "doing adequately" and has had no side effects taking Adderall.  R. 296.  On September 28, 2009, Dr. McClure indicated that Claimant is "doing adequately."  R. 295.  Dr. McClure prescribed Claimant take Tenex along with Adderall.  R. 295.  On October 26, 2009, Dr. McClure indicated that Claimant is "doing adequately" on her medication regimen of Adderall and Tenex.  R. 294.  Dr. McClure indicated that Claimant is "doing adequately in school."  R. 294.  On November 23, 2009, Dr. McClure indicated that Claimant is "doing adequately."  R. 473.  On March 1, 2010, Dr. McClure indicated that Claimant is "doing adequately" and discontinued Tenex.  R. 472.  On March 29, 2010, Dr. McClure indicated that Claimant is "doing adequately" and restarted Tenex because the school complained Claimant was not doing well when not taking it.  R. 471.  On April 26, 2010, Dr. McClure indicated that Claimant is "doing adequately."  R. 470.

On October 25, 2010, Dr. McClure completed a form concerning whether Claimant's ADHD met listing 112.11 in 20 C.F.R. Part 404, subpart P, Appendix 1.  R. 474.  Dr. McClure also completed a domain of functioning questionnaire.  R. 475-78.  On the form addressing whether Claimant's ADHD met listing 112.11, Dr. McClure indicated that his medical findings showed marked inattention, impulsiveness, hyperactivity and a marked impairment in "age-appropriate social functioning."  R. 474.  Dr. McClure also indicated that Claimant has marked difficulties maintaining concentration, persistence or pace.  R. 481.[3]

On the domain of functioning questionnaire, Dr. McClure opined that Claimant has marked limitations in the domains of acquiring and using information, attending and completing

---

[2]  ADHD is Attention Deficit Hyperactivity Disorder.
[3]  Dr. McClure conveyed this finding in a revised form dated October 25, 2010.  R. 481.

tasks, interacting and relating with others and caring for herself.  R. 475-77.  Dr. McClure opined that Claimant is less than markedly limited in moving about and manipulating objects and is not limited with regard to her health and physical well-being.  R. 477.  Dr. McClure expressed his opinions on the ADHD listing form and domain of functioning questionnaire by marking the appropriate space that corresponded with his opinion.  R. 474-78.

### B.  Non-examining State Consultants

On August 20, 2009, William Prather, M.D., completed a childhood disability evaluation form.  R. 297.  Dr. Prather diagnosed Claimant with ADHD, oppositional defiant disorder and expressive language disorder.  R. 297.  Dr. Prather opined that Claimant's impairments are severe but do not meet, medically equal or functionally equal a listing.  R. 297.  Dr. Prather opined that Claimant is markedly limited in acquiring and using information.  R. 299.  Dr. Prather opined that Claimant is less than markedly limited in attending and completing tasks, and interacting and relating with others.  R. 299.  Dr. Prather opined that Claimant is not limited in her ability to move about and manipulate objects, care for herself or in health and physical well-being.  R. 300.

On November 30, 2009, Ira Pinnelas, M.D., completed a childhood disability evaluation form.  R. 319.  Dr. Pinnellas diagnosed Claimant with ADHD, oppositional defiant disorder and speech and language delay.  R. 319.  Dr. Pinnelas opined that Claimant's impairments are severe but do not meet, medically equal or functionally equal a listing.  R. 319.  Dr. Pinnelas opined that Claimant is markedly limited in acquiring and using information.  R. 321.  Dr. Pinnelas opined that Claimant is less than markedly limited in attending and completing tasks, interacting and relating with others, and caring for herself.  R. 321-22.  Dr. Pinnelas opined that Claimant is not limited in her ability to move about and manipulate objects, or physical well-being.  R. 322.

### C.  Speech Language Pathologists - Maria VanSant and M. Colon

On July 16, 2009, Maria VanSant conducted a speech-language examination of Claimant to rule out speech and language deficits.  R. 279.  Ms. VanSant administered a Clinical Evaluation of Language Fundamentals-4 (hereafter "CELF-4"), an informal oral peripheral examination, a parent interview/questionnaire and a speech sample.  R. 279.  Ms. VanSant indicated that the speech sample test "revealed intelligibility to be 80% intelligible," with a "tongue thrust on sibilants, and substitution of k/t blends."  R. 280.  Ms. VanSant indicated that Claimant's "[o]ral structures are functional for speech and eating at this time."  R. 280.  Ms. VanSant found that Claimant's vocal quality, pitch, resonance, volume, fluency and prosody were within the normal limits for her age.  R. 280.

Ms. VanSant indicated that she administered the CELF-4 to determine Claimant's receptive and expressive language abilities.  R. 280.  Ms. VanSant reported that Claimant's core language score was 75, percentile of 5%; Claimant scored 98 on the receptive language index, percentile of 45%; Claimant scored 67 on the expressive language index, a percentile of 1%.  R. 280.  Ms. VanSant also reported that Claimant's "Pragmatics" exhibited decreased eye contact, socialization, turn taking and topic maintenance, as well as a flat affect and decreased participation.  R. 280.

Ms. VanSant diagnosed Claimant with severely decreased articulation and expressive language skills based on her CELF-4 results.  R. 280.  Ms. VanSant indicated that Claimant's Pragmatics were not age appropriate and could be related to her ADHD medication.  R. 280.  Ms. VanSant indicated that Claimant's "voice, fluency and oral motor are adequate for her age."  R. 280.  Ms. VanSant recommended that Claimant receive speech and language services.  R. 281.

On August 18, and November 18, 2009, M. Colon completed speech-language questionnaires. R. 158-60, 194-96.[4]  In both questionnaires, Mr. Colon diagnosed Claimant with impaired speech and noted that Claimant had inadequate lingual movements.  R. 158, 194.  In both questionnaires, Mr. Colon found that Claimant had articulation errors and her speech patterns were not consistent with her chronological age.  R. 158, 194.  In both questionnaires, Mr. Colon found that there was no evidence that Claimant has a language disorder.  R. 159, 195.

In his August 18, 2009, questionnaire, Mr. Colon found that Claimant's speech was intelligible sixty percent (60%) of the time to familiar listeners and fifty percent (50%) of the time to unfamiliar listeners.  R. 159.  Mr. Colon found that Claimant's intelligibility does not improve with repetition.  R. 159.  In his November 18, 2009, questionnaire, Mr. Colon found that Claimant's speech was intelligible sixty percent (60%) of the time to familiar listeners and forty percent (40%) of the time to unfamiliar listeners.  R. 195.  Mr. Colon again also found that Claimant's intelligibility does not improve with repetition.  R. 195.

## II.   ADMINISTRATIVE PROCEEDINGS

On March 6, 2009, Claimant filed her Application, alleging a disability onset date of January 1, 2009.  R. 114.  The Application was denied initially and on reconsideration.  R. 53, 55.  On February 26, 2010, Claimant requested a hearing before an ALJ and the hearing was held on November 2, 2010.  R. 29-52, 69-71.  Ms. Shuren testified at the hearing.  R. 33-52.

Ms. Shuren testified that Claimant was eight years old, attends elementary school and is in the second grade.  R. 33-35.  Ms. Shuren testified that Claimant receives speech therapy at school twice a week.  R. 36.  Ms. Shuren testified that Claimant receives tutoring two days a week for an hour after school.  R. 37.  Ms. Shuren testified that Claimant suffers from ADHD, opposition defiance disorder, a speech disorder and an expressive language disorder.  R. 38, 48.

---

[4]  The record does not indicate Mr. Colon's first name.

Ms. Shuren testified that Claimant has problems completing tasks and making friends as result of these medical conditions.  R. 38.  Ms. Shuren testified that Claimant likes to pick on other kids and make them cry.  R. 50.  Ms. Shuren testified that Claimant does not respect older people and argues with her.  R. 50.  Ms. Shuren testified that Claimant tortures her daughter by pushing her into objects.  R. 51.

Ms. Shuren testified that Claimant has been seeing Dr. McClure for the past six to eight months and her appointments are thirty minutes.  R. 39.  Ms. Shuren testified that Claimant has been seeing a counselor, at a family counseling center, bi-weekly for the past year and half.  R. 39.  Ms. Shuren testified that Claimant takes Albuterol and Panax.  R. 40.  Ms. Shuren testified that Claimant takes Adderall, but it wears off in the evening.  R. 50.

Ms. Shuren testified that Claimant wakes up at 6:30 a.m., showers and brushes her teeth. R. 41.  Ms. Shuren testified that she dresses Claimant and then Claimant catches the school bus at 7:10 a.m.  R. 41-42.  Ms. Shuren testified that Claimant gets home from at school at 2:40 p.m. and plays with toys or the neighborhood kids.  R. 42-43.  Ms. Shuren testified that at 5:00 p.m. she works with Claimant on her homework for an hour.  R. 43.

Ms. Shuren testified that Claimant sometimes washes the dishes, draws, colors, but does not play sports.  R. 44.  Ms. Shuren testified that Claimant has one friend and they sometimes fight.  R. 45.  Ms. Shuren testified that Claimant has problems with concentration and focusing on definitions of words and word sounds.  R. 46.  Ms. Shuren testified that Claimant is often off task at school.  R. 49.  Ms. Shuren testified that Claimant repeated kindergarten and was advanced to second grade even though she did not pass academically.  R. 47.  Ms. Shuren testified that Claimant has been difficult with her teachers, one time tripping her teacher.  R. 47. On another occasion, Ms. Shuren testified that Claimant threw her desk at her teacher.  R. 50.

Ms. Shuren testified that Claimant has an individualized education plan, but the goals have not been met.  R. 51.

On December 3, 2010, the ALJ issued his decision, denying the Application.  R. 10-22. The ALJ found that Claimant has not engaged in substantial gainful activity since February 18, 2009.  R. 13.  The ALJ found that Claimant suffers from the severe impairments of ADHD, oppositional defiant disorder, and speech and language delay.  R. 13.  The ALJ found that Claimant's ADHD and oppositional defiant disorder do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 13.  The ALJ found that Claimant does not have an impairment or combination of impairments that functionally equals the listings in 20 C.F.R. §§ 416.924(d) and 415.926a.  R. 13.  In making this finding, the ALJ discussed the weight he gave to the medical opinions and his findings regarding the six functional equivalence domains.  R. 15-22.

The ALJ articulated several reasons for giving little weight to Dr. McClure's, Claimant's treating doctor, opinion.  R. 15.  First, the ALJ indicated that because Dr. McClure's opinion was expressed on a "standard fill-in-the-blank (check a box) form" it was "entitled to little weight where the opinion is without any explanation of the evidence relied on in forming that opinion." R. 15.  Second, the ALJ indicated that Dr. McClure's treating relationship with Claimant was only six to eight months, lasting thirty minutes per session and primarily for medication review. R. 15.  Third, the ALJ indicated that Dr. McClure primarily relied on the Claimant's subjective reports, rather than objective evidence, in rendering his opinion.  R. 15.  Fourth, the ALJ indicated that Dr. McClure rendered his "opinion in an effort to assist [Claimant] with whom he . . . sympathizes for one reason or another."  R. 15.  Based on these four reasons, the ALJ gave

little weight to Dr. McClure's opinion.  The ALJ gave Drs. Prather and Pinellas', non-examining state consultants, opinions substantial weight.  R. 15.

After assigning weight to the medical opinions, the ALJ evaluated the six functional equivalence domains.  R. 16.  The ALJ found that Claimant has a marked limitation in acquiring and using information.  R. 17.  The ALJ found that Claimant has less than marked limitations in the domains of attending and completing tasks, interacting and relating with others, and caring for herself.  R. 18-19, 20.  The ALJ found that Claimant has no limitations in moving about and manipulating objects or health and physical well-being.  R. 20, 22.  Based on these findings, the ALJ found Claimant not disabled and denied her Application.  R. 22.

## III.   LEGAL STANDARDS

### A.   THE ALJ'S DISABILITY ANALYSIS

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

A child under the age of 18 is considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is

work that is usually performed for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA.  20 C.F.R. §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step-two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c).  For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c).

At steps three and four, the ALJ must determine whether the claimant's impairment or combination of impairments meets or functionally equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

In determining whether an impairment or combination of impairments functionally equals the Listings, the ALJ must assess the claimant's functioning in terms of six domains:   1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for oneself; and 6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  A child's impairments functionally equal a

listed impairment, and thus constitute a disability, if the child's limitations are "marked" in two of the six domains, or if the child's limitations are "extreme" in one of the six domains.  20 C.F.R. § 416.926a(d).

In assessing whether the claimant has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from medically determinable impairments, including any impairments that are not severe.  20 C.F.R. § 416.926a(a). The ALJ must consider the interactive and cumulative effects of the claimant's impairment or multiple impairments in any affected domain.  20 C.F.R. § 416.926a(c).

20 C.F.R. § 416.926a(2) explains that a child has "marked limitation" in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain or complete activities.  A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities.  The regulations also explain that a "marked" limitation also means: a limitation that is "more than moderate" but "less than extreme"; or the equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.  20 C.F.R. § 416.926a(e)(2).

20 C.F.R. § 416.926a(e)(3) explains that a child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities.  A child's day-to-day functioning may be very seriously limited when his impairment(s) limits only one activity or when the interactive and cumulative effects of his impairment(s) limit several activities.  The regulations also explain that an "extreme" limitation also means:

1.  A limitation that is "more than marked."

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean.

3. A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to ensure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

4. For the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation.

20 C.F.R. § 416.926a(e)(3). Thus, for a disability finding, a child's impairments functionally equal a Listing if the child's limitations are "marked" in two of the six domains, or if the child's limitations are "extreme" in one of the six domains. *Id.*

**B.    STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).   The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."   *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

### C.      REMEDIES

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause.   42 U.S.C. § 405(g)(Sentence Four).   To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.   *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine whether proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice. *See Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[5]

## IV.   ANALYSIS

Claimant's first two arguments are that the ALJ erred in determining that she has less than marked restrictions in the domains of interacting and relating with others, and attending and completing tasks. Doc. No. 17 at 14-19. Claimant's third argument is that the ALJ failed to articulate good cause for rejecting the opinion of her treating physicians. Doc. No. 17 at 19-22. Claimant's fourth argument is that the ALJ failed to discuss whether her speech limitation met a

---

[5] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

Listing.  Doc. No. 17 at 22-24.  Because the third issue that Claimant raises may impact the

determination of the other issues raised, the Court addresses it first.

### A.  Weighing Dr. McClure's Opinion

Absent good cause, the opinions of treating physicians must be accorded substantial or

considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the:  "(1) treating physician's opinion was
> not bolstered by the evidence; (2) evidence supported a contrary
> finding; or (3) treating physician's opinion was conclusory or
> inconsistent with the doctor's own medical records." *Phillips v.
> Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citations
> omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th
> Cir. 1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.
> 1986).

*Johnson v. Barnhart*, 138 F. App'x. 266, 269 (11th Cir. 2005).[6]  "The opinion of a non-

examining physician does not establish the good cause necessary to reject the opinion of a

treating physician." *Id*.  Moreover, the opinions of a non-examining physician do not constitute

substantial evidence when standing alone.  *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090,

1094 (11th Cir. 1985).

The ALJ must "clearly articulate the reasons" (i.e. good cause) for giving a treating

doctor's opinion less than substantial weight.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.

1997).  Failure to do so is reversible error.  *Id.*  However, when the ALJ clearly articulates

"specific reasons for failing to give the opinion of a treating physician controlling weight, and

those reasons are supported by substantial evidence, there is no reversible error." *Gilabert v.

Comm'r of Soc. Sec.*, 396 F. App'x. 652, 655 (11th Cir. 2010).

In this case, ALJ gave four reasons for giving little weight to Dr. McClure's opinions.

The ALJ's first reason was that Dr. McClure expressed his opinions on a check box form without

---

[6] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

providing "any explanation of the evidence relied on in forming that opinion."  R. 15.[7]  Dr. McClure did not justify or explain his opinion that Claimant's ADHD met a Listing or his opinions concerning the severity of Claimant's limitations in the six domains of functioning. "[W]hen a physician's report does not contain an adequate explanation for declaring a claimant disabled because it is conclusory in nature, the ALJ is permitted to discount the physician's medical opinion."  *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 at *4 (M.D. Fla. Feb. 28, 2011).  Thus, the ALJ's first reason for discounting Dr. McClure's opinions is supported by substantial evidence.

The ALJ's second reason for giving little weight to Dr. McClure's opinions was that his treating relationship was only "6-8" months, consisting of thirty minute sessions that were primarily for medication review.  R. 15.  Dr. McClure conducted his initial psychiatric evaluation on June 19, 2009.  R. 289.  Dr. McClure's last treatment note is dated April 26, 2010.  R. 470. The treatment records indicate that Dr. McClure's treating relationship was approximately ten months, not six to eight months as the ALJ stated.  This factual error notwithstanding, the ALJ's second reason is not a valid basis for discounting Dr. McClure's opinions.  The length of a treating relationship is a "factor for making more nuanced determinations as to the quality of the medical opinion offered, and cannot be used to circumvent the 'good cause' requirement." *Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *10 (M.D. Fla. Jan. 4, 2008). Further, Dr. McClure's treatment notes document more than just how Claimant was doing on her medications.   Dr. McClure repeatedly made findings concerning whether Claimant was experiencing headaches, nausea, insomnia, suicidal thoughts, chest pain or syncopal episodes.

---

[7]  The Court notes that all the doctors that expressed opinions concerning Claimant's limitations in the six domains of functioning did so via check box forms, including Drs. Prather and Pinnellas.  R. 297-300, 319-22, 475-78.

*See* R. 294-96, 470-73.  Thus, the ALJ's second reason for discounting Dr. McClure's opinions is not supported by substantial evidence.

The ALJ's third reason for giving little weight to Dr. McClure's opinions was that Dr. McClure "primarily relied more upon the claimant's subjective reports rather than the objective evidence."  R. 15.  The fact "that a patient 'self-reports' symptoms is not, standing alone, a reason to discount a treating physician."  *Anderson-Wilson v. Astrue*, No. 1:11cv57–WCS, 2012 WL 161763 at *13 (N.D. Fla. Jan. 18, 2012).  Further, the ALJ provided no facts to justify this statement.  As stated in *Anderson-Wilson*, No. 1:11cv57–WCS, 2012 WL 161763 at *13, the "ALJ obviously thought that [Dr. McClure's] opinion was not supported by objective medical evidence . . . but the reasons for that belief were not articulated as required in this circuit."  The ALJ did not point to any facts to support his statement that Dr. McClure primarily relied on Claimant's self-reported statements, rather than objective medical evidence.  Thus, the ALJ's third reason is not supported by substantial evidence.

The ALJ's fourth reason for discounting Dr. McClure's opinions was the sympathy bias a treating physician may have, which the ALJ surmised was an explanation for a disparity the ALJ perceived between Dr. McClure's opinions and "the rest of the evidence of record . . . ."  R. 16.  In regard to the ALJ's musings about an inherent possibility for sympathy bias in the doctor-patient relationship, that notion is sheer speculation and is contrary to well-established law requiring that a treating physician's opinion be given substantial weight absent clearly articulated good cause for a contrary finding.  *See Lewis*, 125 F.3d at 1440 (ALJ must "clearly articulate the reasons" for giving a treating doctor's opinion less than substantial weight and failure to do so is reversible error); *Anderson-Wilson*, No. 1:11cv57–WCS, 2012 WL 161763 at *13 (fact a treating physician has sympathy for the patient and seeks to alleviate suffering does not detract from a

physician's credibility); and *McCants v. Astrue*, 493 F. Supp. 2d 1217, 1231 (S.D. Ala. 2007) (ALJ's suggestion that treating doctor's findings were based on sympathy was not supported by record and amounted to "little more than pure conjecture and speculation."). Thus, the ALJ's fourth reason is not supported by substantial evidence.

Of the four reasons the ALJ stated for giving Dr. McClure's opinions less than substantial weight, three are not supported by substantial evidence. The Eleventh Circuit has stated that there is no reversible error when the ALJ articulates specific reasons for discounting a treating physician's opinion and those reasons are supported by substantial evidence. *Gilabert*, 396 F. App'x. at 655. The Court has not found, and the parties have not presented, an Eleventh Circuit decision addressing the situation where the ALJ has articulated multiple reasons for discounting a treating physician's opinions, some of which are not supported by substantial evidence. The cases the Court has found are divided on the issue.

In *Genwright v. Astrue*, No. 3:10-CV-913-J-TEM, 2012 WL 527580 at *6 (M.D. Fla. Feb. 17, 2012), the ALJ gave little weight to the treating doctor's opinion because it was inconsistent with the doctor's treating notes, was primarily based on the claimant's subjective symptoms and failed to refer to any objective testing. The Court found the ALJ's last reason for discounting the treating doctor's opinion was not supported by substantial evidence. *Id.* at *8. The Court found this error was harmless because it "would not have changed the outcome of the weight determination in light of the other stated reasons, which meet the good cause standard." *Id.*

In *Jeannette v. Astrue*, No. 3:08-cv-869-J-JRK, 2009 WL 3232097 at *4 (M.D. Fla. Sept. 30, 2009), the ALJ discounted the treating physician's opinions because they conflicted with a CT scan, were inconsistent with EMG/MCV studies and were not supported by the treating

physician's treatment notes.  The ALJ also noted that claimant was treated conservatively and was not taking any significant pain medication.  *Id.*  The court found that the treating physician's opinions were contradicted by the EMG/MCV studies, but that "in every other respect, there is evidence in the record that contradicts the ALJ's decision to discount [the treating physician's] opinion that the ALJ did not fully address."  *Id.*  The court concluded that the "ALJ has not adequately explained his decision to discount" the treating physician's opinions.  *Id.* at *7.  The court directed the ALJ, on remand, to "reevaluate the evidence" in regard to the treating physician's opinion and determine the proper weight it should be given, "clearly articulating adequate reasons supported by substantial evidence if [the treating physician's] opinion is discounted."  *Id.*; *see also Malave v. Sullivan*, 777 F. Supp. 247, 253 (S.D.N.Y. Oct. 25, 1991) ("Since at least two of the stated reasons are either not supported by the record or contrary to established precedents, the ALJ's rejection of the treating physician's opinion is not supported by substantial evidence.").

The Eleventh Circuit has indicated that when an ALJ's reasons for discounting a treating physician's opinion are not supported by substantial evidence, the Court should determine whether the error was harmless.  In *Mills v. Astrue*, 225 F. App'x. 926, 931 (11th Cir. 2007), the ALJ articulated two reasons for discounting one of claimant's treating physicians.[8]  The Eleventh Circuit found that neither reason was supported by substantial evidence.  *Id.*  The Eleventh Circuit indicated that although other doctors' opinions could support the ALJ's ultimate determination, the ALJ failed to mention or explain the weight given to these opinions.  *Id.*  The Eleventh Circuit stated:  "[w]e cannot say the error was harmless without reweighing the evidence."  *Id.*

---

[8] *See supra* note 6.

Harmless error has been described an error or that does not affect a party's substantial rights. *Riddles v. Astrue*, No. 5:09cv388/RS/MD, 2010 WL 5071320 at *5 (N.D. Fla. Nov. 3, 2010). It has also been described as an error that does not affect the end result. *Sample v. Astrue*, No. 2:09-CV-89-FtM-26SPC, 2010 WL 1751947 at *1 (M.D. Fla. Apr. 29, 2010). Stated differently, the "harmless error doctrine essentially dictates that if remand for the correction of an error would not change the outcome . . . such error is deemed harmless." *Torres v. Astrue*, No. 1:11-CV-24 (WLS), 2012 WL 621707 at *2 (M.D. Ga. Feb. 2, 2012).

In this case, three of the four reasons the ALJ gave for giving Dr. McClure's opinions less than substantial weight are not supported by substantial evidence. The Court is unable to determine whether the ALJ would have given Dr. McClure's opinion less than substantial weight and determined Claimant is not disabled if these errors had not been made. This is particularly true when, as here, Dr. McClure's opinions are the only opinions from a treating physician in the record and a treating physician's opinions are entitled to substantial weight, absent good cause that is supported by substantial evidence.

The Court's ultimate conclusion that the errors at issue are not harmless is also bolstered by the fact that the ALJ gave substantial weight to the opinions of the non-examining state consultants, which standing alone are ordinarily entitled to little weight when they contradict the opinions of the treating physician. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The Court notes that the state consultants, whose opinions the ALJ gave substantial weight, also expressed their opinions by checking boxes that corresponded with their opinions on Claimant's limitations in the six domains of functioning. R. 297-300, 319-22. The ALJ discounted Dr. McClure's opinions because he expressed them by checking boxes. R. 15. The ALJ's decision to give the state consultants' opinions greater weight than Dr. McClure's opinions despite the

fact that all the opinions were expressed using check box forms is inconsistent and puzzling.  As a result, the Court cannot determine whether the ALJ would have decided to give Dr. McClure's opinions less than substantial weight if he had not made the errors outlined above.  Accordingly, the Court concludes that the ALJ's decision must be **REVERSED and REMANDED** for further proceedings, pursuant to sentence four of Section 405(g).[9]

## V.    CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1.    The final decision of the Commissioner is **REVERSED and REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g); and

2.    The Clerk is directed to enter judgment in favor of Claimant and close the case.

**DONE and ORDERED** in Orlando, Florida on September 19, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Bradley K. Boyd
1310 West Eau Gallie Blvd
Suite D
Melbourne, FL 32935

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel

---

[9]  On remand, the Commissioner should consider obtaining an opinion from a consultative examining doctor to more fully develop the record, unless new medical evidence is available to supplement the current record.  *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("ALJ has a basic obligation to develop a full and fair record.").

John C. Stoner, Branch Chief
Timothy C. Stevens, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable John S. Pope
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224